Case No. 25-50010

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

**LUCY ABAJIAN-SALON,**

**PLAINTIFF - APPELLANT**

**V.**

**CITY OF SAN ANTONIO, TEXAS,**

**DEFENDANT - APPELLEE**

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

---

**CORRECTED BRIEF OF APPELLANT**

**LUCY ABAJIAN-SALON**

---

Adam Poncio
**PONCIO LAW OFFICES**
**A Professional Corporation**
**5410 Fredericksburg Road #109**
**San Antonio, Texas 78229-3550**
**Telephone: (210) 212-7979**
**Facsimile: (210) 212-5880**

**ATTORNEY FOR APPELLANT**

**May 12, 2025**

## <u>Certificate of Interested Persons</u>

The undersigned counsel of record certifies that the following people have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Lucy Abajian-Salon, Appellant herein and Plaintiff in the trial court.

2. Plaintiff-Appellant was represented in the trial court and on appeal by Adam Poncio, State Bar No. 16109800, S.D. ID No 194847, Poncio Law Offices, P.C., San Antonio, Texas 78229, aponcio@ponciolaw.com.

3. Appellee City of San Antonio, Texas, Appellee herein and Defendant in the trial court.

4. Appellee City of San Antonio was represented in the trial court by attorney Elizabeth Guerrero-Southard, Assistant City Attorney, City of San Antonio, Texas, State Bar No: 24032376, Elizabeth.Guerrero-Southard@sanantonio.gov., San Antonio, Texas 78205.

5. Appellee City of San Antonio, Texas is represented on appeal by attorney Jacqueline Marie Stroh, Law Offices of Jacqueline M. Stroh, P.C., State Bar No. 00791747, jackie@strohappellate.com, San Antonio, Texas, 78209

**/s/ Adam Poncio**
**ADAM PONCIO**

Statement Regarding Oral Argument

The Appellant believes that oral argument would permit a full discussion of the facts and evidence of discrimination, retaliation and pretext that support a factual question for the jury to decide and the error committed by the trial court in granting summary judgment as to the claims involved in those errors.

Table of Contents

Certificate of Interested Persons ................................................................2

Statement Regarding Oral Argument ........................................................3

Table of Contents ....................................................................................4

Table of Authorities ................................................................................6

Statement of the Issues Presented for Review ..........................................9

1.   A reasonable jury could find that Lucy Abajian-Salon was subjected to discrimination based on her race, national origin, ethnicity, sex and/or age.   The District Court disregarded the applicable summary judgment standards and the standards applied by the court do not consider the proper standards in its interpretation and findings regarding the evidence presented. ..................................9

2.   This court should vacate and/or set aside the opinion of the District Court and remand to the District Court for reconsideration, including re-briefing and/or reconsideration, based on the significant impact in this case of the recent United States Supreme Court opinion in *Muldrow v. City of St. Louis, Missouri*, 601 U.S. ---- (April 17, 2024), and/or this court's recent opinions in *Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir., August 18,2023) and *Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006 (5th Cir., October 13, 2023). ......................................9

Statement of the Case...............................................................................10

A.       Procedural Background ................................................................10

B.     Factual Background ...................................................................................11

SUMMARY OF ARGUMENT ...............................................................................24

ARGUMENT AND AUTHORITIES.......................................................................25

A.     Standard of Review........................................................................................25

C.     A Reasonable Jury Could Find All Reasons Given for Dismissing Lucy Abajian-Salon Were Pretextual.................................................................................30

Certificate of Service ...............................................................................................37

Certificate of Compliance ........................................................................................37

# **Table of Authorities**

**Cases**

*Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006 (5th Cir., October 13, 2023) ...................................28

*Ames v. Ohio Dep't of Youth Servs.*, 87 F.4th 822 (6th Cir. 2023), *cert. granted*, 145 S. Ct. 118 (2024). .........28

*Autry v. Fort Bend Ind. Sch. Dist.*, 704 F.3d 344, 347 (5th Cir. 2013) ...........................................32

*Brady v. Off. of Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008) ...............................................28

*Brosseau v. Haugen*, 543 U.S. 194, 195, n. 2, 125 S.Ct. 596, 160 L.Ed.2d 583(2004)(per curiam). ................27

*Caldwell v. KHOU-TV*, 850 F.3d 237, 242-43 (5th Cir. 2017) ...................................................25

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ............................................................27

*Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999) ................................................31

*Eaglin v. Tex. Children's Hosp*., 801 F. App'x 250, 255 (5th Cir. 2020) ..........................................33

*EEOC v. Boh Bros. Constr. Co., LLC,* 731 F.3d 444, 452 (5th Cir. 2014) (en banc) ..............................30

*Equal Emp. Opportunity Comm'n v. Ryan's Pointe Houston, LLC*, No. 19-20656, 2022 WL 4494148 at *3 (5th Cir. Sept. 27, 2022)..............................................................................................33

*Etienne v. Spanish Lake Truck & Casino Plaza, LLC*, 778 F.3d 473, 475 (5th Cir. 2015)........................32

*Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577 (1978) .....................................................31

***Haire v. Bd. of Supervisors of La. State Univ., 719 F.3d 356 at 365 n.10 (5th Cir. 2013)*** .....................35

*Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir., August 18, 2023) ...........................................28

*Herster v. Bd. of Supervisors of Louisiana State Univ*., 877 F.3d 177, 189 (5th Cir. 2018)...........................26

*Hunt v. Rapides Healthcare System*, 277 F.3d 757, 768 (5th Cir. 2001) ..........................................31

*Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 993 (5th Cir. 2005)...........................................31

*Laxton v. Gap, Inc.*, 333 F.3d 572, 579 (5th Cir. 2003)..........................................................32

Muldrow v. City of St. Louis, Missouri, 601 U.S. ---- (April 17, 2024) ........................................10, 27

***Owens v. Circassia Pharms., Inc*.,** 33 F.4th 814, 829 (5th Cir. 2022) ........................................34

*Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328–29 (5th Cir. 1994)..................................33

*Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) .................................................32

*Ramirez v. Landry's Seafood Inn & Oyster Bar*, 280 F.3d 576, 578 n. 3 (5th Cir. 2002)..........................25, 30

*Redburn v. City of Victoria*,898 F.3d. 486 (5th Cir. 2018) ......................................................26

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) .......................................31

*Rutherford v. Harris Cty*., 197 F.3d 173, 180 n.4 (5th Cir. 1999) ...............................................33

*Sims v. City of Madisonville*, 894 F.3d 632, 637 (5th Cir. 2018).................................................26

***Smith v. Xerox Corp.*,** 371 F. App'x 514, 520 **(5th Cir. 2010)** ...........................................36

*Stryker Corp. of Mich.*, 104 F.4th 1278, 1289 **(11th Cir. 2024)** ............................................34

*Tanner v. Stryker Corp. of Mich.*, 104 F.4th 1278, 1289 **(11th Cir. 2024)** ..................................34

*Thornbrough v. Columbus & Greensville R. Co.*, 760 F.3d 633, 646 (5th Cir. 1985)............................31

*Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (May 5, 2014).........................................................27

*Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001) ...........................................32

## **Statement of Jurisdiction**

The district court had federal question jurisdiction under 28 U.S.C. § 1331 because the claims arise under federal statutes, including Title VII and 42 U.S.C. section 1981.

Pursuant to 28 U.S.C. §1291, this Court has jurisdiction over this appeal from the district court's order of granting summary judgment.  This order became final on December 4, 2024, when the district court issued its memorandum opinion granting Appellees' summary judgment motion, *ROA 25-50010.1255-1272*, and entered final judgment, *ROA 25-50010.1273*.

Appellant timely filed her notice of appeal on January 3, 2025. *ROA 25-50010. 1274-1298*, within 30 days of the order granting summary judgment and entry of the final judgment.  See Fed. R. App. P. 4(a)(1).

**Case No. 25-50010**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**


**LUCY ABAJIAN-SALON,**

**PLAINTIFF - APPELLANT**

**V.**

**CITY OF SAN ANTONIO, TEXAS,**

**DEFENDANT - APPELLEE**


**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**


**BRIEF OF APPELLANT**

**LUCY ABAJIAN-SALON**

## <u>Statement of the Issues Presented for Review</u>

1.    A reasonable jury could find that Lucy Abajian-Salon was subjected to discrimination based on her race, national origin, ethnicity, sex and/or age. The District Court disregarded the applicable summary judgment standards and the standards applied by the court do not consider the proper standards in its interpretation and findings regarding the evidence presented.

2.    This court should vacate and/or set aside the opinion of the District Court and remand to the District Court for reconsideration, including re-briefing and/or reconsideration, based on the significant impact in this case of the recent United States Supreme Court opinion in *Muldrow v. City of St. Louis, Missouri*, 601 U.S. ---- (April 17, 2024), and/or this court's recent opinions in *Hamilton v. Dallas County*, <u>79 F.4th 494</u> (5th Cir., August 18,2023) and *Abdallah v. Mesa Air Grp., Inc*., <u>83 F.4th 1006</u> (5th Cir., October 13, 2023).

## Statement of the Case

### A.     Procedural Background

1.     While initially pro se, Appellant Lucy Abajian-Salon (herein after "Plaintiff" or "Appellant") filed her Original Complaint against Appellee City of San Antonio, Texas on August 16, 2023. *ROA.25-50010.8-24*.   Appellant Abjian-Salon asserted causes of action based on sex, age, ethnicity, race and national origin discrimination under Title VII, the Age Discrimination in Employment Act and 42 U.S.C section 1981 claims based on race, color and national origin. *ROA.25-50010.8-24*.   Attorney Adam Poncio then appeared on behalf of Plaintiff, *ROA 25-50010.64-66*, and filed a First Amended Complaint on December 1, 2023, adding state law claims under the Texas Labor Code. *ROA.25-50010.76-91*.

2.     After discovery and other matters, Appellee-Defendant City of San Antonio, Texas filed its motion for summary judgment on June 25, 2024 (Dkt 22, *ROA 25-50010.115-540*, with exhibits.  Appellant filed her response on September 17, 2024 (Dkt 29, *ROA 25-50010.565-763*), and filed an amended response on October 31, 2024 (Dkt 41, *ROA 25-50010.1045-1245*). Appellee filed its Amended Reply on November 4, 2024 (Dkt 42, ROA 25-50010.1246-1253).

3.     The District Court issued its Memorandum Opinion and Order on December 4, 2024, granting Appellee's summary judgment motion, ROA 25-50010.1255-1272, and entered final judgment, ROA 25-50010.1273.

4.     Appellant timely filed her notice of appeal on January 3, 2025. ROA 25-50010. 1274-1298, within 30 days of the order granting summary judgment and entry of the final judgment.  See Fed. R. App. P. 4(a)(1).

## B.     Factual Background

5.     Appellant-Plaintiff Lucy Abajian-Salon (hereinafter referred to as "Appellant Abajian-Salon" or simply "Plaintiff" or "Appellant-Plaintiff") is a former employee of the City of San Antonio's police department.  She is a female who was born in 1974 (age 46 at termination), in the country of Lebanon, and whose ethnic background is part Armenian and part Lebanese. She speaks six different languages, including English, French, Arabic, Lebanese, Armenian and German.  She speaks with a noticeable foreign accent. (see Amended Petition at *ROA.25-50010.76-91* ¶ *7-8*, and Declaration filed in support of her MSJ response, *ROA 25-50010.1086-1098, attached as Exhibit 1* to the MSJ response*, ¶ 2.* Plaintiff asserts Defendant discriminated against her based on her age, sex. national origin and ethnicity, and race.

6.     Appellee-Defendant City of San Antonio (hereinafter "Appellee" or Defendant" or "Appellee-Defendant") hired Appellant-Plaintiff Abajian-Salon as a San Antonio Police Officer on January 1, 2020.  She attended the San Antonio Police Department Academy from on or about January 20, 2020, to August 28, 2020, and

successfully graduated from the San Antonio Police Academy and began patrol duties on August 28, 2020, *ROA.25-50010.1086-1098* ¶ *3*.

7.    After graduation, Abajian-Salon was supervised by a Field Training Officer [FTO] and successfully completed her FTO training without any documented deficiencies.  She then began working on the streets without an FTO.  She had no on-duty related deficiencies during her tenure as an SAPD officer, *ROA.25-50010.1086-1098* ¶ *4*.

8.    However, on April 6, 2021, Chief William McManus issued a letter that terminated Plaintiff Abajian-Salon effective April 8, 2021, purportedly based upon events that happened while she was off duty at or near her residence on or about December 18, 2020, *ROA.25-50010.1086-1098* ¶ *5*.

9.    The events at issue show that on or about December 1, 2020, and the next seventeen to eighteen days, Appellant-Plaintiff had called the Bexar County Sheriff's Office to make noise complaints against the builders in her subdivision creating excessive noise during construction near her home.

10.    On December 18, 2020, Appellant-Plaintiff Abajian-Salon was off-duty at her residence located outside the jurisdiction of the City of San Antonio.

11.    On December 18, 2020, the construction workers at a nearby home under construction continued to make noise that disturbed the peace, and Appellant Abajian-Salon spoke to the construction workers about the noise. The foreman of

the construction workers made false allegations of criminal mischief and the Bexar County Sheriff's Office, not the San Antonio Police Department, responded to the false complaint. Bexar County Sheriff's Office Deputies investigating the matter investigated and resolved the matter as a civil matter; the BCSO Deputies made no arrest, and the Deputies made no criminal complaint.

12.     However, on December 19, 2020, Appellee-Defendant City of San Antonio, through the San Antonio Police Department, required Plaintiff to fill out an administrative form SAPD Form 200-OR regarding the incident.   Appellant Abajian-Salon was told this form is "for administrative internal police department purposes only and will not be used against you in a criminal investigation." The representation was false.

13.     Appellant-Defendant supposedly conducted an investigation of the alleged events that occurred outside its jurisdiction.   However, it was not a proper investigation and was filled with inaccuracies.  Procedure 303 of the San Antonio Police Department provides a mechanism for conducting disciplinary investigations by the Internal Affairs Unit for non-criminal conduct.   The procedure was not followed with regard to Plaintiff Abajian-Salon.

14.     San Antonio police Chief McManus testified in a deposition that when he fired Plaintiff: "I have the authority to terminate a probationary officer without due process if I see fit to do that.  And that's what I did in this case." McManus contended

he had the authority to fire a probationary employee based on a briefing from command staff without seeing a completed Internal Affairs investigation (Exhibit 3, McManus deposition at p.34 LL 4-7 – p 38 L 5), *ROA 25-50010.1134-1138*).

15.    When Chief McManus fired Plaintiff, the SAPD did not conduct a complete Internal Affairs investigation.  For example, the Internal Affairs Unit did not permit Plaintiff to respond to interrogatories though the IA Sergeant had prepared interrogatories for Plaintiff to answer.  McManus admitted he did not have the authority to fire someone with insufficient proof and stated that he would never do that (Exhibit C, McManus deposition at p. 38 L 23 – p 39 L 4), *ROA 25-50010.1138-1139*).  In fact, SAPD failed to follow its own handbook and procedures and never allowed for the participation by Plaintiff.  As a result, there were inaccuracies and mis-statements regarding what even happened.

16.    McManus also admitted that if he fired Abajian-Salon when she did not commit criminal mischief or there was insufficient proof of criminal mischief, he fired her wrongly (Exhibit 3, McManus deposition at p.39 LL 5 15), *ROA 25-50010.1139*.

17.    Moreover, the San Antonio Police Department did not allow its Internal Affairs Unit to submit an IA investigation to the CARB the Complaint and Administrative Review Board.  Again, SAPD failed to follow its own guidelines and procedures.

18.     Chief McManus fired Plaintiff by serving her with Personnel Order 21-019 which alleged in part: "On December 18, 2020, you were involved in an off-duty disturbance which developed in to a criminal investigation for the offense of Criminal Mischief."   However, there was no lawful criminal investigation for criminal mischief, so the statement was false.   McManus' claim of events that happened on December 18, 2020, did not lawfully develop into a criminal investigation.   Also, the incident happened outside the territorial limits of the City of San Antonio, *ROA.25-50010.1086-1098* ¶¶ *6-14*.

19.     Bexar County Sheriff's Office Deputies, and not the SAPD, responded to Plaintiff's subdivision. The Deputies for the Bexar County Sheriff's Office generated a SPEARS Summary Report under BCSO 20-0371052 in which BCSO classified the December 18, 2020, call for service as a civil matter with the entry: "Made location and contacted complainant who stated that it was handled between themselves."  As is clear, there was never a formal complaint and any representation by the Appellee-Defendant that they properly terminated Appellant-Plaintiff is without support or evidence *ROA.25-50010.1086-1098* ¶ *16*.

20.     However, Chief McManus testified that before he fired Plaintiff, he knew BCSO responded to the location.  McManus testified that he never complained to the Sheriff of Bexar County that the Deputies handled the call as a civil matter.

McManus testified that he never asserted the Deputies engaged in malfeasance in their handling of the call *ROA.25-50010.1086-1098* ¶¶ *17.*

21.    Although the San Antonio Police Department had no jurisdiction to conduct a criminal investigation against Plaintiff, SAPD did so.    SAPD Internal Affairs Sergeant Glenn Michalek testified in a deposition that there was no damage that was evidenced or that could be proven regarding the incident so there could not be criminal mischief.   He also testified there was no criminal charge filed against Plaintiff with the Bexar County Criminal District Attorney's Office by testifying: "If Integrity had filed with the -- the Bexar County District Attorney's office, I don't know that they can because it actually occurred out of our jurisdiction" (Exhibit 4 – Glenn Michalek deposition at p 58 L 10 – p 61 L 4); *ROA.25-50010.1221-1224.*

22.    Chief McManus alleged that Plaintiff committed criminal mischief by damaging an air compressor and a radio.  McManus believed Plaintiff had smashed a radio.  However, McManus' belief was false, as there was no such evidence.

23.    The items of property involved were an air compressor and a speaker.  No witness gave a statement of damage to any compressor or the value of the air compressor or speaker before the alleged incident. No police officer obtained photographs of the air compressor or speaker before and after the incident.    No police officer tested the functionality of the speaker and air compressor before and after the incident. No alleged owner of the speaker and air compressor filed a sworn

statement that he or she wished to prosecute Appellant-Plaintiff for criminal mischief (Exhibit 4- Glenn Michalek deposition at p 50 L 16- p 61 L 4), *ROA.25-50010.1213-1224*.

24.    IA Sergeant Glenn Michalek testified that he had filed criminal mischief cases when he worked in property crimes and therefore had the competence and knowledge of what constitutes criminal mischief.  Michalek testified that based on his experience he knew whether the DA would accept or reject a case based upon the elements of criminal mischief.  Michalek testified that he knew based upon his knowledge, experience, and training, that when the prosecution cannot prove a loss in value, there can be no proof of criminal mischief.  Michalek further testified that when there is no substantial inconvenience, there can be no crime and in fact there was no evidence from any putative owners of property that they had suffered a substantial inconvenience (Exhibit 4- Glenn Michalek deposition at p 50 L 16- p 61 L 4), *ROA.25-50010.1212-1224*.

25.    Michalek had a copy of the SAPD "criminal investigation" and based upon Michalek's investigation, he knew based upon body worn camera videos, the job site had more than one size, colored and models of air compressors and did not know whether the putative owner's Hitachi compressor had been damaged (Exhibit 4- Glenn Michalek deposition at p 50 L 16- p 61 L 4), ROA.*25-50010.1212-1224*.

26.    Before McManus fired Appellant-Plaintiff, he knew based upon his Department's "criminal investigation" that the owners of the property did not wish to press charges.  Chief McManus admitted and testified that he knew that if there is no complainant, there is no crime to be charged.

27.    When Chief McManus initially fired Appellant-Plaintiff, he issued her a Dishonorable Discharge on an F-5 filed with the Texas Commission on Law Enforcement.  McManus testified that he corrected the F-5 to "General" because there was no evidence that Plaintiff committed a crime (Exhibit 2, McManus deposition at p 19 L7 – p 20 L 19; p 40 LL 20 – 25; p 49 LL 4 - 9), *ROA.25-50010, 1119* to 1120, 25-50010, 1140, 1149.

28.    McManus' admission there was no crime contradicts his personnel order that terminated Plaintiff.

29.    Plaintiff was a probationary officer at the time Defendant terminated her.

30.    Plaintiff asserted that McManus and Appellee-Defendant City of San Antonio discriminated against her because McManus had not automatically fired other Probationary Officers.  In fact, Defendant has provided other probationary officers with the full benefits of having a complete IA investigation and presentation of their case to the CARB.

31.    Appellee-Defendant had provided other probationary officers the ability to present a rebuttal to the allegations in a *Loudermill* hearing before discipline is

imposed. McManus and Appellee-Defendant, did not give Appellant-Plaintiff a Loudermill hearing.

32.     As a result, Appellant-Plaintiff alleged that Defendant treated her differently and more harshly than other probation officers who were younger than Plaintiff.

33.     Appellant-Plaintiff alleged that the Defendant-Appellee treated her differently and more harshly than other probationary officers who were born in the United States of America and/or are not of Lebanese/Armenian racial/ethnic heritage.

34.     Appellant-Plaintiff asserted that she was treated differently and more harshly than other probationary officers who were males. Appellant-Plaintiff asserted that male probationary officers were given an opportunity to rebut the allegations in Internal Affairs before Appellee-Defendant made a decision to issue them discipline. Appellant-Plaintiff was denied that opportunity for an Internal Affairs investigation. Appellant-Plaintiff asserted male probationary officers were treated more leniently for far more egregious conduct than Appellant-Plaintiff's alleged misconduct and these male probationary officers were not terminated.

35.     Appellant presented evidence, for example, that on July 24, 2010, a male Probationary Officer, Luis Sone, brought reproach and discredit to the San Antonio Police Department, on his first day on the street alone as an officer when he allowed a witness to an apparent sudden death by drug overdose "a grace period to get rid of paraphernalia or any trash" that he didn't want police officers to find at the scene.

McManus did not fire Probationary Officer Luis Sone who committed an offense by encouraging and directing directed citizens to conceal or destroy evidence, which would be a violation of <u>Texas Penal Code Section 37.09</u>. Sone's conduct meets the elements of two felony offenses: (1) False report and (2) Tampering with evidence (See Response Exhibit 5E, Sone Documents), *ROA.25-50010.1231-1233*.

36.    In addition, in 2014, male Probationary Officer Gary Tuli became intoxicated at a restaurant bar.   Probationary Officer Gary Tuli became belligerent with bar/restaurant guests and patrons.   Probationary Officer Gary Tuli was yelling at people showing his SAPD badge. The matter was also handled by Bexar County Sheriff Office deputies and Tuli was off duty.   BCSO issued Probationary Officer Tuli a criminal trespass warning and drove him home because he was too intoxicated to drive.   Tuli's conduct was more egregious than what was alleged against Plaintiff, yet Tuli's conduct, which also happened off duty, was also handled by BCSO, and was not criminally investigated for public intoxication or disorderly conduct. Moreover, McManus did not terminate Probationary Officer Tuli (See Response Exhibit 6, Tuli Documents), *ROA.25-50010.1234-1237*.

37.    The disparity between the treatment of Sone and Appellant-Plaintiff is even more egregious when one considers that the City failed to conduct a criminal investigation against Sone; yet the City chose to initiate a criminal investigation against Appellant-Plaintiff.  Sone's misconduct directly related to his duties, and on-

duty obligations as an SAPD officer. Sone's conduct was within the jurisdiction of the San Antonio Police Department, whereas the actions of Plaintiff were outside the City's jurisdiction, i.e., its geographical boundaries. Sone's misconduct involved dishonesty and impaired an ongoing investigation that was being conducted by SAPD; whereas, Appellant-Plaintiff's conduct did not implicate honesty or an ongoing SAPD investigation.

38.    The disparity between how Appellee-Defendant treated Tuli and Appellant-Plaintiff is egregious because Tuli was intoxicated, and Plaintiff was not. Tuli was given a no trespass warning whereas Plaintiff had a right to be in her subdivision.

39.    In 2011, Probationary Officer Sarah Carrasco, who based upon information and belief, was born in the United States and is younger than Plaintiff, was terminated from her position as a probationary officer for being involved in a verbal and physical altercation, exhibiting aggressive behavior during the incident (See Response Exhibit G, Carrasco Documents), *ROA.25-50010.1238-1245*.

40.    During McManus' deposition, he realized he had no basis to claim a criminal case and changed his rationale for firing Plaintiff by claiming she aggressively approached the putative complainants; a change in the reasoning for Appellant-Plaintiff's termination.

41.    After Carrasco was terminated, she was permitted to present a rebuttal to McManus, and he reinstated her under a last chance agreement.

42.    Chief McManus refused to meet with Appellant-Plaintiff and she was not given the opportunity to enter into a last chance agreement.

43.    McManus accused Carrasco of being involved in a verbal and physical altercation.  McManus accused Carrasco of accepting a ride from an intoxicated person and continuing her altercation.

44.    McManus' Last Chance Agreement with Carrasco established Carrasco's termination was based upon a specific IA case number and the findings of such investigation.  Carrasco's behavior was more egregious than that of Plaintiff and based upon information and belief, Carrasco was younger than Plaintiff and was born in the United States.

45.    Appellant-Plaintiff was deprived of the conditions of due process and fair treatment given to the other probationary officers by not having the benefit of an IA investigation or the ability to meet with the Chief.

46.    The three probationary officers named above as comparators were similarly situated since all three, like, Plaintiff, were at will employees who lacked civil service protection, and none of the three probationary officers were of Armenian/Lebanese racial/ethnic heritage *ROA.25-50010.1086-1098* ¶¶ *16-42*.

47. In support of her response to Appellee-Defendant's summary judgment, Appellant Plaintiff Abajian-Salon provided as evidence the following evidence, which is incorporated herein for all purposes:

A.      The Declaration of Plaintiff Lucy Abajian-Salon *ROA.25-50010.1086-1098*.

B.      The Declaration of Attorney Adam Poncio as to Exhibits, *ROA.25-50010.1099-1100*.

C.      Deposition of Chief William McManus, *ROA.25-50010.1101-1162*.

D.      Deposition of Sergeant Glenn Micalek, *ROA.25-50010.1163-1230*.

E.      Luis Sone Documents, *ROA.25-50010.1231-1233*.

F.      Gary Tuli Documents, *ROA.25-50010.1234-1237*.

G.      Sarah Carrasco Documents, *ROA.25-50010.1238-1245*.

# SUMMARY OF ARGUMENT

There is conflicting testimony and conflicting evidence and facts which support questions of fact that should have been presented to a jury. There are key issues bearing on Appellant-Plaintiff's discrimination claims, which should have been determined by a jury.

A reasonable jury could reject Appellee's account of the events, and instead interpret the evidence presented by Appellant Abajian-Salon as evidence of discrimination. Moreover, the asserted reasons and changing positions by the various City representatives themselves and San Antonio Chief of Police McManus contradict each other. "[R]esolving conflicts in testimony is the exclusive providence of the trier of fact and may not be decided at the summary judgment stage." *Ramirez v. Landry's Seafood Inn & Oyster Bar*, 280 F.3d 576, 578 n. 3 (5th Cir. 2002).

A reasonable jury could reject as false and pretextual the justifications proffered by Appellee for dismissing Plaintiff Abajian-Salon, particularly where Chirf McManus' testimony demonstrates Appellant should not have been terminated because, as Chief McManus admits, under the facts it would have been a mistake and he "fired her wrongly" under the facts. A jury can infer pretext from the fact that a "Defendant's explanations and reasoning have transformed over time." *Caldwell v. KHOU-TV*, 850 F.3d 237, 242-43 (5th Cir. 2017).

## **ARGUMENT AND AUTHORITIES**
### **A.     Standard of Review.**

1.     This Court reviews de novo a grant of summary judgment, applying the same standards as the district court. *Caldwell vs. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017).  The burden is on the moving party in a summary judgment to establish that there is "no genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Sims v. City of Madisonville*, 894 F.3d 632, 637 (5th Cir. 2018) (quoting *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013)); see *Redburn v. City of Victoria*, 898 F.3d. 486 (5th Cir. 2018) ; *Herster v. Bd. of Supervisors of Louisiana State Univ.*, 877 F.3d 177, 189 (5th Cir. 2018); *Patton v. Jacobs Engineering Group, Inc.*, 874 F.3d 437, 442 (5th Cir. 2017). "[A]ll that is required [to defeat a motion for summary judgment] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968).

2.     Summary judgment is only appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists,

and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); that is not the case on the record preseted.

3.    The United States Supreme Court reminded us that courts cannot resolve genuine disputes of fact in favor of the moving party, especially where there are competing affidavits or evidence. *Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (May 5, 2014); *See also Brosseau v. Haugen*, 543 U.S. 194, 195, n. 2, 125 S.Ct. 596, 160 L.Ed.2d 583(2004)(per curiam).

4.    In ruling on a motion for summary judgment, a judge's role is to determine whether there is a genuine issue for trial, not to weigh the evidence and determine the truth of the matter. *Tolan v. Cotton* at 1866.

**B.    A reasonable jury could find that Lucy Abajian-Salon was subjected to discrimination based on her race, color and national origin, age and/or sex. The District Court improperly disregarded the applicable summary judgment standards.**

5.    The District Court in this case issued its Memorandum Opinion and Order on December 4, 2024.  However, the landscape of Title VII cases and required showings and damages was significantly impacted by the recent United States Supreme Court opinion in *Muldrow v. City of St. Louis, Missouri*, 601 U.S. ---- (April 17, 2024). Much like in the *Muldrow* case, this court should vacate and/or set aside the opinion of the District Court and remand to the District Court for reconsideration based on the *Muldrow* opinion and/or this court's recent opinions in *Hamilton v. Dallas*

*County*, <u>79 F.4th 494</u> (5th Cir., August 18, 2023) and *Abdallah v. Mesa Air Grp., Inc.*,

<u>83 F.4th 1006</u> (5th Cir., October 13, 2023).

6.      Indeed, remanding is justified in the interest of justice and to ensure that the

proper standards were/are applied in light of the new jurisprudence found in

*Muldrow*, *Hamilton* and *Abdallah.*   Moreover, this court should consider that the

Supreme Court is now considering whether the McDonnall-Dougles test should even

be considered. See *Brady v. Off. of Sergeant at Arms*, <u>520 F.3d 490</u> (D.C. Cir. 2008)

(Then-Judge Kavanagh wrote that once the employer offers a legitimate non-

discriminatory reason, the prima facie case is no longer relevant, so courts should

not even look at the prima facie elements. Instead, in such a case courts need only

decide whether the employee has produced sufficient evidence that employer's

proffered reason was not the real reason and that prohibited intentional

discrimination occurred); *see also* discussion of *Brady* concept (and *McDonnell

Douglas* generally) in the recent Supreme Court argument in *Ames v. Ohio Dep't of

Youth Servs.*, <u>87 F.4th 822</u> (6th Cir. 2023), *cert. granted*, <u>145 S. Ct. 118</u> (2024).

7.      *Muldrow* addressed Title VII and held that an employee challenging harm or

discrimination under Title VII must show that the action brought about some harm

with respect to an identifiable term or condition of employment, but that harm need

not be significant.

8.     Moreover, in *Hamilton*, the Fifth Circuit held that an Appellant plausibly alleges a disparate-treatment claim under Title VII if she pleads discrimination in hiring, firing, compensation, or the "terms, conditions, or privileges" of her employment. Finally, the Fifth Circuit in *Abdallah* held that in establishing a 1981 claim, as asserted by Appellant in the present case, the test is whether the outcome would be different but for the protected class that can be shown by comparing the experience of the Appellant to what his treatment would have been but for the protected class or by comparing the experience of the Appellant to another individual without the protected class. If either leads to a different outcome, disparate treatment has occurred. *Id.* at 1015.  It cannot be disputed that in the present case the Appellant demonstrated that Appellant was treated differently.  It was inevitably Appellant that was disciplined differently.

9.     Appellant provided ample evidence of discrimination based on her race, ethnicity, national origin, sex and age.

10.     The District Court impliedly construes the evidence in Appellee's favor and disregarded the applicable summary judgment standards.

11.     The evidence is clear that the District Court disregarded the applicable summary judgment standards and that the standards applied do not consider or improperly disregard the recent opinions in *Muldrow*, *Hamilton* and *Abdallah*. this court should vacate and/or set aside the opinion and judgment of the District Court

and remand to the District Court for trial and/or reconsideration, including re-briefing and/or reconsideration, based on the *Muldrow* opinion and/or this court's recent opinions in *Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir., August 18,2023) and *Abdallah v. Mesa Air Grp., Inc*., 83 F.4th 1006 (5th Cir., October 13, 2023).

12.     This appeal should be decided based on the well-established rule that conflicts in evidence or testimony cannot be resolved at summary judgment. The judge improperly invaded the province of the Jury and made his own conclusions based on the evidence. "[A] 'judge's function' at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (internal quotations and citation omitted). "[I]t is the function of the jury as the traditional finder of the facts, and not for the Court, to weigh conflicting evidence and inferences and determine the credibility of witnesses." *EEOC v. Boh Bros. Constr. Co., LLC*, 731 F.3d 444, 452 (5th Cir. 2014) (en banc) (internal quotations and citations omitted). "[R]esolving conflicts in testimony is the exclusive province of the trier of fact and may not be decided at the summary judgment stage." *Ramirez v. Landry's Seafood Inn & Oyster Bar*, 280 F.3d 576, 578 n. 3 (5th Cir. 2002).

13.     The Fifth Circuit analyzes the discrimination and retaliation claims under the *McDonnell Douglas* framework, as there is "no significant difference between such

claims under the …. anti-discrimination laws." *Hunt v. Rapides Healthcare System*, 277 F.3d 757, 768 (5th Cir. 2001) (citing *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999)).

## C.    A Reasonable Jury Could Find All Reasons Given for Dismissing Lucy Abajian-Salon Were Pretextual.

14.    "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000). The inaccuracy of a defendant's explanation can be highly probative because, if a disputed employment action were taken for a legitimate reason, the employer would know what that reason is. *Id.*, 530 U.S. at 147-48, citing *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577 (1978). "In the context of a summary judgment proceeding, the question is not whether the Appellant proves pretext, but rather whether the Appellant raises a genuine issue of fact regarding pretext." *Thornbrough v. Columbus & Greensville R. Co.*, 760 F.3d 633, 646 (5th Cir. 1985). There are genuine issues of fact on the reasons Appellee advanced in this case and/or the reasons are pretextual based on contradiction of positions by management and falsity or mistake as Chief McManus admitted.

15.    Appellant has offered sufficient evidence that Appellee's articulated reasons are a pretext for discrimination, or that Appellees' stated reasons, if true, are only

some reasons for its conduct, and discrimination is another motivating factor. *See Autry v. Fort Bend Ind. Sch. Dist.*, 704 F.3d 344, 347 (5th Cir. 2013).

16.     In establishing pretext, Appellant has substantiated her claims through evidence demonstrating that discrimination lay at the heart of the decision to terminate her. *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). The evidence is of such quality and weight that reasonable and fair-minded men or women in the exercise of impartial judgment might reach different conclusions." *Laxton v. Gap, Inc.*, 333 F.3d 572, 579 (5th Cir, 2003) (citation and quotation marks omitted). This is a case that should go to the jury.

17.     Appellant Abajian-Salon may prove discrimination through either direct or circumstantial evidence. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). "If the Appellant presents only circumstantial evidence, then she must prove discrimination inferentially using the three-step McDonnell Douglas" burden-shifting framework. *Etienne v. Spanish Lake Truck & Casino Plaza, LLC*, 778 F.3d 473, 475 (5th Cir. 2015) (citation and quotation omitted). But if the Appellant proffers direct evidence of discrimination, there is no need to resort to McDonnell Douglas because, by definition, direct evidence "proves the fact of intentional discrimination without inference or presumption." *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328–29 (5th Cir. 1994) (citation and quotation omitted).

18.    Direct evidence discrimination cases are "rare." *Equal Emp. Opportunity Comm'n v. Ryan's Pointe Houston, LLC*, No. 19-20656, 2022 WL 4494148 at *3 (5th Cir. Sept. 27, 2022) (quoting *Rutherford v. Harris Cty*., 197 F.3d 173, 180 n.4 (5th Cir. 1999)). That is because it will be the rare case where "statements or documents" will "show on their face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action." *Eaglin v. Tex. Children's Hosp*., 801 F. App'x 250, 255 (5th Cir. 2020) (quotation omitted) (emphasis added) (quoting *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 993 (5th Cir. 2005)).

19.    The inaccuracy of a defendant's explanation can be highly probative because, if a disputed employment action were taken for a legitimate reason, the employer would know what that reason is. *Id*., 530 U.S. at 147-48, citing *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978). "In the context of a summary judgment proceeding, the question is not whether the Plaintiff proves pretext, but rather whether the Plaintiff raises a genuine issue of fact regarding pretext." *Thornbrough v. Columbus & Greensville R. Co*., 760 F.3d 633, 646 (5th Cir. 1985). There are genuine issues of fact on the reasons Appellee-Defendant advanced for termination in this case and/or the reasons are pretextual based on contradiction of positions by management, falsity and temporal proximity alone.

20.     Appellee-Defendant asserted, as demonstrated by the testimony of Chief William McManus, that they terminated Plaintiff Abajian-Salon because of the complaint and investigation regarding the off-duty incident with the construction workers.  The evidence demonstrates that while called to the scene, the Bexar County deputies determined the matter was a civil matter and there was no investigation nor complaint.  The reason to support the termination has shifted because the assertion that she was the subject of a complaint, damage or criminal mischief is simply false and not supported by the improper attempt at investigation.  When evidence shows "'that the employer's explanation is not just wrong, but that it is so implausible that the employer more likely than not does not believe it,'" a jury may infer that the explanation is a pretext for discrimination. *See Dusel v. Factory Mut. Ins. Co.*, 52 F.4th 495, 508 (1st Cir. 2022) (but finding no such evidence). *See also Tanner v. Stryker Corp. of Mich.*, 104 F.4th 1278, 1289 (11th Cir. 2024); *Owens v. Circassia Pharms., Inc*., 33 F.4th 814, 829 (5th Cir. 2022) (An employer's failure to properly investigate "may tend to permit a rational inference that the employer's ultimate reason for taking an adverse action is unbelievable").

21.     By his own words, Chief of Police McManus admittedly wrongfully terminated Appellant-Plaintiff Lucy Abajian-Salon.  When Chief McManus fired

Plaintiff, the SAPD did not conduct a complete Internal Affairs investigation. For example, the Internal Affairs Unit did not permit Plaintiff to respond to interrogatories though the IA Sergeant had prepared interrogatories for Plaintiff to answer. McManus admitted he did not have the authority to fire someone with insufficient proof and stated that he would never do that (Exhibit A, McManus deposition at p. 38 L 23 – p 39 L 4).

22.     **McManus also admitted that if he fired Abajian-Salon when she did not commit criminal mischief or there was insufficient proof of criminal mischief, he fired her wrongly** (Exhibit A, McManus deposition at p.39 LL 5 15). The evidence shows there was no evidence of criminal mischief and there was insufficient evidence of criminal conduct.

23.     There are several ways that a plaintiff may demonstrate pretext. For example, as would apply in this case, a plaintiff may show that the employer's stated legitimate reason is false. *Haire v. Bd. of Supervisors of La. State Univ.*, 719 F.3d 356 at 365 n.10 (5th Cir. 2013). Again, as in this case, a plaintiff may show that an employer failed to follow its own policies and procedures. *See, e.g.*, *Smith v. Xerox Corp.*, 371 F. App'x 514, 520 (5th Cir. 2010) (failure to follow company policies). In this case, as set out above, Appellee-Defendant failed to follow its own handbook and

guidelines requiring an investigation, investigation procedures and the basis for termination is inconsistently changing.  No one was interviewed and Defendants conducted essentially no investigation and instead terminated Plaintiff based on false assumptions.

## Conclusion and Prayer for Relief

For the foregoing reasons, Appellant prays that the Summary Judgment in this matter be reversed, in whole or in part, and the matter remanded to the trial court for a trial on the merits, in whole or in part, and/or rendered in favor of Appellant, in whole or in part, and for such other and further relief to which Appellant may be entitled at law or in equity.  Alternatively, Appellant further requests this court should vacate and/or set aside the opinion of the District Court and remand to the District Court for reconsideration, including re-briefing and/or reconsideration, based on the *Muldrow* opinion and/or this court's recent opinions in *Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir., August 18,2023) and *Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006 (5th Cir., October 13, 2023), and in the interest of justice so that justice may prevail.

Respectfully submitted,

**/s/ Adam Poncio**
**ADAM PONCIO**
**State Bar No. 16109800**

**PONCIO LAW OFFICES**
**A Professional Corporation**
**5410 Fredericksburg Road #109**
**San Antonio, Texas 78229-3550**
**(210) 212-7979 Telephone**
**(210) 212-5880 Facsimile**

**ATTORNEY FOR APPELLANT LUCY**
**ABJIAN-SALON**

## **Certificate of Service**

I certify that a true and correct copy of this proposed sufficient corrected brief document has been served upon counsel for the appellee via the court's electronic filing system on May 7, 2025.

**/s/ Adam Poncio**
**ADAM PONCIO**

## **Certificate of Compliance**

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

1.     This document complies with the word limit of Fed. R. App. P. 32(a)(7(b)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(g), this document contains 5558 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionately spaced typeface using Microsoft Word 365 in 14 point Times New Roman.

*/s/ Adam Poncio*
**ADAM PONCIO**
**COUNSEL FOR APPELLANT**

**Dated: May 7, 2025**